IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PAMELA ALEXANDER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 3:07-CV-1486-M |
| HARTFORD LIFE & ACCIDENT | § | |
| INSURANCE COMPANY, | § | |
| | § | |
| Defendant. | § | |

Before the Court are Plaintiff Pamela Alexander's ("Alexander") Motion for Summary Judgment [Docket Entry # 28] and Defendant Hartford Life and Accident Insurance Company's ("Hartford") Motion for Summary Judgment [Docket Entry # 27]. Also before the Court are Defendant's Objections and Motions to Strike Plaintiff's Summary Judgment Evidence [Docket Entries # 34, 37, and 40].

As a preliminary matter, Hartford objects to the length of Alexander's summary judgment filings, relying on Local Rule 7.2(c). The applicable rule for briefs relating to motions for summary judgment is Local Rule 56.5(b), which states that a principal brief must not exceed fifty pages, and a reply brief must not exceed twenty-five pages. Alexander's principal brief is forty-seven pages long, and her reply brief is twenty pages long. Both filings are thus in compliance with the pertinent local rule, and Hartford's objections to the length of Alexander's summary judgment filings are therefore **DENIED**. Similarly, Hartford objects to the length of Alexander's brief in response to Hartford's Motion for Summary Judgment, which is also governed by Rule 56.5(b). Alexander's responsive brief, a principal brief, is forty-two pages in length, which is shorter than that allowed by the local rules. Hartford's Objection to its length is also therefore **DENIED**. Hartford's remaining Objections are either disposed of by the

following discussion on the merits of the Motions for Summary Judgment, or are **DENIED AS MOOT** given the Court's determination that Hartford's Motion for Summary Judgment should be granted.

Having considered the Motions for Summary Judgment, the briefing, the evidence before the Court, and the applicable law, the Court is of the opinion that Alexander's Motion for Summary Judgment should be **DENIED**, and that Hartford's Motion for Summary Judgment should be **GRANTED**.

## BACKGROUND

Hartford is an insurance provider for Cook Children's Medical Center, where Alexander was employed as the Bone Marrow Transplant Coordinator. In November 2001, Alexander began experiencing chronic lower back pain. In 2002, she underwent surgery to remove a mass, and felt relief for several months, but by December 2002 Alexander stopped working due to resurgent pain in her lower back and right thigh. To help alleviate her pain, Alexander was prescribed narcotic medications, including Oxycontin, Neurotin and Vicodin.

In May of 2003, Alexander filed a claim with Hartford for long-term disability ("LTD") benefits. Under the Hartford policy, the insured qualifies for LTD benefits if:

> During the "elimination period" and for the next twenty-four months [the insured is] prevented by accidental injury, sickness, mental illness, substance abuse or pregnancy, from performing one or more of the "essential duties" of [the insured's] occupation, and as a result [the insured's] current monthly earnings are no more than eighty percent of [the insured's] pre-disability earnings. After that, [the insured] must be so prevented from performing one or more of the essential duties of any occupation.[1]

In support of her claim for LTD, Alexander submitted a statement from her treating physician, Dr. Paul A. Grant, which listed "right chronic low back pain" as Alexander's primary diagnosis, "right SI joint dysfunction" as the secondary diagnosis, and "right low back, hip & leg

---
[1] Hartford's Motion for Summary Judgment, Appendix AR 0030.

pain, [w]orse when sitting," as subjective symptoms. Dr. Grant deferred making a determination as to Alexander's actual impairment until a Functional Capacity Exam ("FCE") and physical therapy could be completed, and suggested that a decision as to whether Alexander had any limitations would be "undecided" until a more clear diagnosis was made. The FCE was performed on June 3, 2003, by WorkSteps, Inc., which determined that Alexander's Physical Demand Classification was "light with the accompanying endurance projections."

Based on the medical information it received from Dr. Grant and WorkSteps, as well as an independent Occupational Analysis, Hartford approved Alexander's claim for LTD, effective July 12, 2003. Hartford then referred Alexander's file to a Medical Clinical Case Manager to monitor Alexander's condition. The Case Manager questioned Hartford's reliance on the June 3, 2003 FCE, having concluded that the findings were inconsistent and that "several areas [were] not tested,"[2] and that as a result Alexander's limitations and restrictions were unclear. The Case Manager requested additional information from Alexander's treating physician, Dr. Grant. In response, a representative from Dr. Grant's office stated that the June 3, 2003 FCE did not specifically address any restrictions or limitations on Alexander's ability to return to full-time employment in a sedentary to light position.[3] Hartford also learned that Dr. Grant had referred Alexander to a pain management specialist, Dr. Kenneth Buley, for an assessment of her functional abilities.

In a September 2003 evaluation of Alexander, Dr. Buley reported:

> [Alexander has] [c]hronic right lower back pain with occasional right anterior thigh pain of unclear etiology... It has been suggested to her by several physicians that her pain may be due to scar tissue irritating some nerves. However, this is

---

[2] Hartford's Motion for Summary Judgment, Appendix AR 0072.
[3] Hartford conducted an "Occupational Analysis," and concluded that Alexander's occupation qualified as a "sedentary position," which was less than the "light duty" occupational demands of Transplant Coordinators in the national economy.

unclear. Given the fact that her pain generally occurs when she is sitting, standing, bending, lifting or walking, but completely disappears when she is lying down, would suggest to me that this is not necessarily a neuropathic process, especially since I would expect neural irritation by scar tissue to be fairly chronic and worse at night when trying to sleep. Rather, the presence of primarily right lower back pain, which is worse when bending at the waist or when in an upright position performing functional activities, would suggest more of a musculoskeletal problem than a neuropathic one... Again, she does not have any evidence of lumbosacral radiculopathy, spinal stenosis, significant focal disc protrusion, facet joint pain syndrome, or right sacroiliac joint pain as indicated by a largely negative lumbar spine MRI scan and lack of improvement with selective injections as described above. As per her FCE about three months ago in 6/2003, the physical therapist did not feel she could perform all of the essential functions of her job at that time, and this seems to be the case at this point as well. However, if her back pain is the result of a decompensation syndrome based on the above factors, I would expect her problem to improve steadily over the next two months with an aerobic walking exercise program... *I have completed her disability form, and I believe she will be ready to return to her usual job without restrictions within the next two to three months*.[4]

On September 29, 2003, after reviewing the medical findings of Dr. Buley and Dr. Grant, Hartford reversed its initial decision and notified Alexander that she no longer qualified for LTD benefits, and that she would not receive any disability payments after October 20, 2003.

Alexander then requested reconsideration of her claim. Alexander explained that she had been scheduled for neuropsychiatric testing because her employer was concerned about Alexander working while taking narcotic medications. Hartford agreed to review Alexander's file, and later received records from an October 16, 2003 follow-up examination of her by Dr. Buley. Dr. Buley opined that Alexander's pain resulted from lower back decompensation and stated:

> [Alexander] does not appear to be functionally limited while in my office today. She became tearful while discussing this issue and tells me that by this afternoon she will be in worse pain and be unable to function. Additionally, she is concerned about her mental status and indicates she has short term memory difficulties on her medications. Judging from my conversation with her today, I cannot objectively confirm this, and she will need to discuss that issue with Dr. Grant, who is prescribing these medications for her... Since she is still

---

[4] Emphasis added.

complaining of significant pain despite a significant amount of Oxycontin and Oxycodone, perhaps these medications should be tapered, especially in light of the fact that she does not appear to have any evidence of a significant disease process as previously discussed... *She really needs to become more physically active, and I believe returning to work will be beneficial to her in the long run.*[5]

As part of its review, Hartford's Case Manager investigated whether the narcotics prescribed to Alexander could possibly hinder her ability to perform her occupation. The Case Manager concluded Alexander was taking large doses of narcotics, such that her short term memory could be affected, but that "her memory/cognitive status had not been assessed clinically and there were no restrictions and limitations relative to memory loss." Still, Hartford decided to request an independent review by the Medical Advisory Group, with instructions that Dr. Grant be contacted about Alexander's narcotic usage. In response to questions propounded by Hartford, Dr. Grant said:

> In my opinion and that of Dr. Buley's [sic] there is no physical reason for this patient, a RN, [not] to return to some type of nursing duty.[6] I do not feel that she is disabled. It is noted however, that her employer does not want her to return to work on her current medication regime.

Dr. Grant also stated that his treatment plan included weaning Alexander off of OxyContin, over a period of 30-90 days. On March 3, 2004, Hartford upheld its decision to terminate Alexander's LTD benefits. In June of 2004, Alexander requested an appeal review of the benefit determination, complaining that the true nature of her medical problem was not accurately communicated to Hartford, because she had had difficulty obtaining supporting documentation. Alexander produced the findings of two additional doctors: 1) Dr. Farhat, her new treating physician, who suggested the cause of Alexander's neuropathic pain was myelopathy or pleopathy, resulting from the formation of scar tissue after a retroperitoneal

---

[5] Emphasis added.
[6] The record makes clear that Dr. Grant mistakenly omitted the word "not" from his statement. Reading the statement in context leaves no room to doubt the intended inclusion of "not."

resection; and 2) Dr. Ulrich, a neurologist, who opined that Alexander had "some irritation of the intrapelvic portion of the femoral cutaneous nerve on the right side." Dr. Ulrich's suspicion was also that Alexander developed scar tissue where the mass had been resected.

Hartford granted Alexander's request and began its appeal review in June 2004. As part of the review, Hartford ordered a new Occupational Analysis, and sent Alexander's file to the University Disability Consortium ("UDC") for an independent medical records review. The UDC reviewer, Dr. Elizabeth Roaf, contacted Alexander's treating physicians, Drs. Grant and Farhat, and Dr. Sklar (a second pain management specialist who Alexander visited on referral from Dr. Grant), to discuss their findings in the context of her independent review of the medical records.

Dr. Sklar reported to Dr. Roaf that pain and endurance were issues for Alexander, and suggested that Alexander might be capable of a type of sedentary work that did not require as much "cognitive concentration," as did her job as the Bone Marrow Transplant Coordinator. Dr. Sklar mentioned no other specific restrictions or limitations on Alexander's return to work. Dr. Grant stated that Alexander reported severe pain, but after examining her, he found no objective evidence to explain such pain. Dr. Grant opined that Alexander had some type of pain syndrome, but did not identify any restrictions on Alexander's ability to work. Dr. Farhat told Dr. Roaf that he had not actually performed an FCE, and therefore could not specifically comment on Alexander's ability to sit, stand, or walk. However, Dr. Farhat opined that Alexander suffered from lumbar plexopathy.

 In her report, dated August 18, 2004, Dr. Roaf stated that:

> [Alexander] has reported subjective symptoms of sedation based on her medications. No neuropsychological testing had been done to assess this to indicate that she does in fact have cognitive impairment with memory or concentration or focus. The records do indicate that the insured was cognitively

intact according to Dr. Ulrich's assessment, and Dr. Grant stated that he had not noted any cognitive impairment... It is not clear whether there are any limitations based on her ability to work as a result of medications... Multiple medications that the insured has been taking for pain are known to have sedation as a potential side effect. With this in mind, it is plausible that the insured feels unable to function cognitively. However, it is not documented in the record.

Dr. Roaf concluded:

> Based on the medical records available, the insured does not appear to have been physically precluded from working a full-time sedentary position as noted in the medical records available reviewed from 10/03 going forward with restrictions as noted above.

In correspondence dated September 1, 2004, Hartford notified Alexander that after its appeal review it determined her condition did not meet the definition of "disability" and, therefore, no further benefits would be paid to her.

On August 18, 2007, almost three years after the final appeal review determination had been made, Alexander attempted to submit to Hartford additional documentation in support of her claim. Hartford returned the documents to Alexander on August 23, 2007, explaining that it had made its final decision on September 1, 2004, and that "[t]here are no provisions for additional appeals or a re-opening [of] the administrative record after a final appeal determination." Alexander then filed suit in this Court on August 31, 2007.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure Rule 56, summary judgment is appropriate when the facts and law, as reflected in the pleadings, affidavits and other summary judgment evidence, show that no reasonable trier of fact could find for the nonmoving party as to any material fact.[7] "The moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material

---

[7] *See* FED. R. CIV. P. 56; *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986).

fact, but is not required to negate elements of the nonmoving party's case."[8] Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate by demonstrating the existence of a genuine question of material fact.[9]

When a LTD plan administrator has "discretionary authority to determine eligibility for benefits and to construe the terms of the plan," the court reviews the administrator's decision for an abuse of discretion.[10] Here, Hartford had discretionary authority to determine Alexander's eligibility for benefits, so this Court reviews Hartford's determination for an abuse of discretion.

"A plan administrator abuses its discretion if it acts arbitrarily or capriciously."[11] Under this standard, if the plan fiduciary's decision is supported by substantial evidence, and is not arbitrary and capricious, it must prevail.[12] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[13] In contrast, "[a]n arbitrary decision is one made without a rational connection between the known facts and the decision or between the found facts and the evidence."[14]

The review of an administrator's decision "need not be particularly complex or technical; it need only assure that the administrator's decision fall[s] somewhere on a continuum of reasonableness—even if on the low end."[15] "Even if the [p]laintiff's claim is supported by record evidence, the reviewing court must defer to the administrator's decision if the plan

---

[8] *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 322–25).
[9] *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).
[10] *Corry v. Liberty Life Assurance Co. of Boston*, 499 F.3d 389, 397 (5th Cir. 2007).
[11] *Bernardo v. Am. Airlines, Inc.*, No. 07-20900, 2008 WL 4657080, at *3 (5th Cir. Oct. 22, 2008) (unpublished) (citing *Meditrust Fin. Servs. Corp. v. Sterling Chems. Inc.*, 168 F.3d 211, 214 (5th Cir. 1999)).
[12] *See Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004).
[13] *Id.*
[14] *Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich.*, 97 F.3d 822, 828 (5th Cir. 1996).
[15] *Vega v. Nat'l Life Ins. Serv., Inc.,* 188 F.3d 287, 297 (5th Cir. 1999).

administrator's denial is also supported by substantial evidence."[16] Where, as here, the administrator is self-interested because it both insures and administers the plan, a district court should consider this conflict of interest as one factor in determining whether a plan administrator has abused its discretion in denying a claimant's benefits.[17]

## ANALYSIS

**A.      Alexander's Motion for Summary Judgment**

Under Rule 56, Alexander has the burden of proving that no genuine issue of material fact exists, so that this Court must hold that Hartford abused its discretion in denying her claim. Alexander argues that Hartford abused its discretion because Hartford had no "concrete evidence" for its decision, and as a result there is no "rational connection" between the administrative record and the final decision to deny LTD benefits. As evidence of this abuse of discretion, Alexander asserts that Hartford: 1) disregarded or gave improper weight to contrary evidence; 2) failed to adequately consider Alexander's subjective evidence of pain or address Alexander's concerns regarding her medication; 3) failed to supply specific policy information to a consulting physician; and 4) acted arbitrarily and capriciously in refusing to consider supplemental documentation submitted by Alexander in August of 2007. Additionally, Alexander argues that in conducting its review for an abuse of discretion, this Court should view the evidence in a light less deferential to Hartford because of the conflict of interest flowing from Hartford being both the insurer and the plan administrator in this case. However, because the Court finds that Alexander has not produced evidence that indisputably establishes an abuse of discretion by Hartford, her Motion for Summary Judgment is **DENIED** on each of the above grounds.

---

[16] *Dramse v. Delta Family-Care Disability and Survivorship Plan*, No. 07-10287, 2008 U.S. App. LEXIS 5412, at *23 (5th Cir. Mar. 12, 2008) (citing *Ellis,* 394 F.3d at 273).
[17] *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2346 (2008).

1. Hartford's review of contrary evidence

Alexander alleges that Hartford either failed to consider or gave improper weight to evidence offered in support of her disability claim. The decision of the Fifth Circuit in *Corry v. Liberty Life Assurance Co. of Boston* is highly germane to the determination of this issue.[18] In *Corry*, three of the defendant administrator's consulting physicians could identify no objective or clinical reasons for the plaintiff's pain, while two of plaintiff's treating physicians concluded that because of such pain, the plaintiff was disabled and unable to work.[19] In granting the administrator's motion for summary judgment, the Fifth Circuit reasoned that although there was some evidence that the plaintiff was unable to work, there was also substantial evidence supporting the administrator's decision to deny the plaintiff's claim.[20] The court highlighted the difficult burden faced by an ERISA plaintiff, explaining that the law only requires an administrator to have "substantial evidence" for its decision, and that the job of weighing conflicting evidence is to be left to the administrator rather than the courts.[21] The Fifth Circuit held that a "claim that the administrator was arbitrary and capricious in failing to consider and give proper weight to relevant evidence must be rejected," if such evidence is contrary to other medical opinions, that is, other relevant evidence, in the possession of the administrator.[22]

Here, Alexander points to evidence that allegedly supports her claim, and argues that Hartford's decision was arbitrary and capricious because it denied benefits in spite of this favorable evidence. For example, Dr. Farhat stated that although he never performed an FCE, he believed Alexander's pain had a "legitimate mechanical source." Dr. Sklar also opined to Dr. Roaf that Alexander had a "pain syndrome" and that, given Alexander's reliance on pain

---

[18] *Corry,* 499 F.3d at 397.
[19] *Id.* at 395-99.
[20] *Id.* at 401.
[21] *Id.*
[22] *Id.*

medication, it was reasonable she not be required to return to work. However, in contrast, Dr. Grant stated "I do not feel she is disabled," and Dr. Buley concluded that "[Alexander] really needs to become more physically active, and … returning to work will be beneficial to her in the long run." These statements constitute "contrary evidence" for the administrator to weigh in making its determination in this case.

Hartford's decision to give less weight to the medical opinions supporting Alexander's claim than it did to the other evidence before it does not constitute an abuse of discretion.[23] Hartford was entitled to weigh the competing evidence in arriving at its benefit determination. The medical opinions of Dr. Grant and Dr. Buley constitute "substantial evidence" to support Hartford's benefit determination. As a result, this Court must defer to the administrator's decision to deny Alexander's claim.[24]

    2. <u>Alexander's subjective complaints of pain and concerns regarding medication</u>

In *Corry*, the Fifth Circuit addressed the argument that a defendant administrator's decision to terminate disability benefits was arbitrary and capricious because it discounted or ignored the plaintiff's subjective claims of pain and disability.[25] Notably, the benefits denial letter in *Corry* not only indicated that the administrator took into account the plaintiff's subjective complaints of pain, but also stated that the plaintiff's physicians considered her complaints and nevertheless concluded she was capable of work.[26] The court in *Corry*

---

[23] *See Black & Decker Disability Plan v. Nord*, 538 U.S. 882, 831 (2003) ("plan administrators are not obliged to accord special deference to the opinions of treating physicians"); *Gothard v. Metro. Life Ins. Co.*, 491 F.3d 246, 249 (5th Cir. 2007) ("An administrator does not abuse its discretion when it relies on the medical opinion of a consulting physician whose opinion conflicts with the claimant's treating physician . . . even if the consulting physician only reviews medical records and never physically examines the claimant.").
[24] The conflict of interest flowing from Hartford's role as both plan administrator and insurer is addressed below.
[25] *See Corry*, 499 F.3d at 400.
[26] *Compare id*. *with Bernardo,* 2008 WL 4657080, at *3 (where the administrator's denial letter failed to even mention one of two disabling conditions in its denial of the plaintiff's claim, the Fifth Circuit held that the denial of benefits was arbitrary and capricious because it failed to address the fact that the plaintiff's treating physicians found the unmentioned condition to be "totally disabling").

concluded, "although it is certainly true that [the administrator's] reference to [the plaintiff's] subjective complaints were less prominent than [the administrator's] emphasis on the lack of objective medical evidence of a disability, it is clear that [the administrator's] analysis considered [the plaintiff's] subjective complaints of disability," and as a result the decision could not be deemed arbitrary or capricious.[27] Alexander's argument fails for the same reason.

Alexander objects to Hartford's decision to deny LTD benefits because she believes Hartford unreasonably required objective evidence despite her subjective complaints of pain. But the denial letter in this case also specifically referenced Alexander's subjective complaints, and in fact quoted Alexander's own description of her pain: "The source of my pain is complex and cannot be regarded the same as functional or common back pain..." Furthermore, the denial repeatedly referenced the physicians' consideration of her subjective complaints. It states: "Dr. Grant noted that despite the lack of objective findings and the trial of multiple medications, you continued to report severe pain," and recounts that "Dr. Farhat felt that your pain complaints were related to two separate issues..." It also notes: "Dr. Sklar advised that he last saw you on April 8, 2004, at which time you reported that you were still experiencing pain," and acknowledges that "Dr. Sklar opined that you could not perform your occupation based upon your report that your medications made you groggy and not as sharp on your job." Alexander contends, as did the plaintiff in *Corry*, that her subjective complaints and her evidence should have been given *more* weight than the contrary view.[28] But the Fifth Circuit clearly mandates that the job of weighing valid, but conflicting, opinions does not belong to the courts; it belongs to the administrators of ERISA plans. Alexander's subjective evidence of pain was, in fact,

---

[27] *Corry*, 499 F.3d at 400.
[28] *See id.* at 401.

considered.[29] Hartford's weighing of it against other evidence is not an abuse of discretion.

Contrary to Alexander's assertion, this case is distinguishable from the Fifth Circuit's recent decision in *Bernardo v. American Airlines, Inc.*[30] In *Bernardo*, the plaintiff sought disability benefits because she suffered from aplastic anemia, and from the negative side effects of her medications, specifically cyclosporine A neurotoxicity.[31] The Fifth Circuit reversed the district court's grant of summary judgment for the plan administrator because "an unexplained gap exists between [the treating physician's] finding disability and his explanation for this finding and the conclusory report of [the reviewing physician], who found no disability."[32] The Fifth Circuit further explained:

> There is no evidence in the record that [the reviewing physician] considered the reports of [the treating physicians] with regard to [plaintiff's] cyclosporin A neurotoxicity, except for [the reviewing physician's] speculation that [plaintiff] "may have some side effects from cyclosporin" but these "do not appear to be overwhelming." The plan administrator and the reviewing physicians have *presented no evidence that contradicts the treating physicians' conclusion that [plaintiff] "is 100% disabled from work*, and likely has been since the onset of Cyclosporin A usage." Based on this record, the Plan abused its discretion in denying long-term disability benefits to plaintiff and the district court erred in granting summary judgment in favor of the Plan on this record.[33]

Plaintiff contends that the "unexplained gap" in *Bernardo* "parallels in the [sic] 'gap' between the 'Occupational Description' developed by Hartford and the determination of Ms. Alexander's own employer that she could not work while on narcotic pain medication." However, as this Court has already explained, there is evidence in this case that Hartford considered both Alexander's subjective complaints of pain, and her complaints regarding the effects of her medication in its denial of LTD benefits. The Fifth Circuit's holding in *Bernardo* turned on the

---

[29] *See id.* (citing *Gothard*, 491 F.3d at 249-50).
[30] *Bernardo,* 2008 WL 4657080, at *3.
[31] *Id.* at *2. These side effects included profound fatigue, tremors, and nausea.
[32] *Id.* at *4.
[33] *Id.* (emphasis added).

*complete failure* of the administrator to consider the *uncontradicted evidence* of disability resulting from the cyclosporine A neurotoxicity.[34]

In the case at hand, the evidence is far from uncontradicted, and the record reflects that the conflicting evidence was actually considered by Hartford. In considering the effects of Alexander's medication, Hartford relied on the opinion of Dr. Grant, the prescribing physician, and the opinion of Dr. Ulrich, both finding Alexander to be cognitively intact. These doctors, in addition to Dr. Buley and Dr. Roaf, found no objective evidence related to her medication that would prevent Alexander from returning to work. Dr. Grant stated, "[i]n my opinion and that of Dr. Buley's [sic] there is no physical reason for this patient, a RN, [not] to return to some type of nursing duty. I do not feel that she is disabled. It is noted however, that her employer does not want her to return to work on her current medication regime." Additionally, Dr. Grant explained that he actually planned to wean Alexander off the narcotic medications. Dr. Buley also opined that "[s]ince [Alexander] is still complaining of significant pain despite a significant amount of Oxycontin and Oxycodone, perhaps these medications should be tapered, especially in light of the fact that she does not appear to have any evidence of a significant disease process as previously discussed." The nature of the opinions of Alexander's treating physicians thus differ greatly from those in *Bernardo*, and it was reasonable for Hartford to weigh the competing evidence to determine if Alexander qualified for LTD based on her use of narcotic medications. And importantly, unlike the denial letter in *Bernardo*, the denial letter in this case specifically acknowledged Alexander's concerns regarding her medication. As a result, Hartford did not abuse its discretion in considering Alexander's subjective evidence of pain, and in evaluating her

---

[34] *Id.* In *Bernardo*, both treating physicians opined, supported by detailed medical evidence, that the plaintiff was "totally disabled" and "100% disabled from work," due to the side effects of her medication, despite the remission of her aplastic anemia. But the denial letter only cited the remission, and failed to even mention the debilitating side effects of the treatment.

concerns regarding her medications, because the competing evidence was, in fact, considered.

      3. Failure to provide medical consultant with specific policy information

Alexander alleges that Hartford improperly relied on the opinion of a hired medical consultant, Dr. Roaf. In particular, Alexander contends Dr. Roaf's evaluation is not "rationally connected" to the claim's denial because Dr. Roaf was asked to assess Alexander's functional limitations, having never been provided with the policy definition of "disability," or a detailed description of Alexander's job requirements. Alexander cites no authority in support of her contention that an abuse of discretion occurs when an administrator fails to provide specific policy definitions or job descriptions to doctors from whom medical opinions are solicited.

The Court finds that the medical opinions expressed by Dr. Roaf were rationally based on the medical records and on discussions with Alexander's treating physicians, and that her conclusions were medical, rather than administrative in nature. Dr. Roaf explained in her report that "[b]ased on the medical records available, the insured does not appear to have been physically precluded from working a full-time sedentary position."[35] Such an evaluation, while not relying on Alexander's specific job description or Hartford's policy definitions, is logically within the expertise of a medical expert who was provided with medical records and access to treating physicians. Dr. Roaf offered no opinion as to how Alexander's medical condition should be interpreted in light of Hartford's policy, nor did she make the ultimate claim determination. That task fell to Hartford. As a result, this Court finds that Hartford did not abuse its discretion when it relied on Dr. Roaf's independent medical opinion, along with the other substantial evidence, even though Hartford did not provide Dr. Roaf with specific policy definitions or occupation descriptions.

---

[35] Hartford's Motion for Summary Judgment, Appendix AR 0343-44.

4. Fair opportunity to consider supplemental information

Alexander claims that Hartford acted arbitrarily and capriciously, and therefore abused its discretion, when it refused to consider the additional documentation Alexander submitted almost three years after Hartford made its final appeal decision and two weeks before filing suit. The Fifth Circuit, in *Vega v. National Life Insurance Services, Inc.*, held that a claimant may be allowed to add additional evidence to the administrative record before suit is filed if it is submitted in a manner that gives the administrator a "fair opportunity" to consider the evidence.[36] Alexander argues that the additional evidence she submitted to Hartford is in fact part of the administrative record, and also constitutes evidence of Hartford's abuse of discretion, because Hartford was given a fair opportunity to consider it but refused to do so.[37] Because this Court finds that Hartford did not have a "fair opportunity" to consider the new evidence, the Court declines to find an abuse of discretion on this basis.

In the unpublished decision of *Keele v. JP Morgan Chase Long Term Disability Plan*, the Fifth Circuit acknowledged that the law is unsettled with regard to the "fair opportunity" requirement for supplementing the administrative record.[38] In that case, the plaintiff alleged that under *Vega*, documentation she submitted to the administrator eighteen months after its final appeal decision should have been considered part of the administrative record.[39] The court recognized that the "key language from *Vega* has not been interpreted by this court" but that the

---

[36] *Vega,* 188 F.3d at 299.
[37] Alexander again relies on *Bernardo*, and asks this Court to construe Hartford's refusal to consider the supplemental evidence as an abuse of discretion in light of the Fifth Circuit's holding in *Bernardo* that the plan administrator acted arbitrarily and capriciously because there was no evidence that the reports of the treating physicians were considered. However, Alexander misconstrues the Fifth Circuit's holding in *Bernardo*. The overlooked evidence in *Bernardo* was submitted *during* the formal appeal process. In this case, Alexander attempted to submit additional evidence *after* the appeal process was exhausted, and she thus cannot rely on Hartford's refusal to revisit its decision, after the process had been exhausted, as a failure to consider the evidence in the first instance.
[38] *Keele v. JP Morgan Chase Long Term Disability Plan*, 221 F. App'x 316, 319 (5th Cir. 2007) (unpublished).
[39] *Id.* at 318.

"interpretation of *Vega* poses a number of practical problems."[40]

The "fair opportunity" language can be interpreted two different ways. On one hand, the "fair opportunity" requirement could suggest that "new evidence submitted by the claimant becomes a part of the administrative record *even if it is submitted after the administrator has reached its final decision*" as long as the administrator has a fair opportunity to consider it.[41] The "fair opportunity" under this interpretation refers to the amount of time between the final decision and the submission of new evidence, and whether it is "fair" to submit new information after a certain amount of time has passed. But, the Fifth Circuit acknowledged that "[r]ead thusly, [the passage] conflict[s] with prior cases in which we indicated that the administrative record consisted of those documents before the administrator *at the time the [final] claims decision was made*."[42] In contrast, "fair opportunity" might also refer to:

> [T]he length of time between the claimant's submission of the new evidence and subsequent filing of suit in federal court. Such an interpretation is consistent with the overriding concern of *Vega*, which was to "encourage the parties to resolve their dispute at the administrator's level."[43]

The Court finds that because Alexander attempted to supplement the administrative record almost three years after Hartford made its final decision, Alexander's attempted submission of additional evidence did not allow Hartford a "fair opportunity" to consider it. The Court is persuaded by the practical implications implicit in the first interpretation—namely, if the Court required Hartford to consider additional documentation submitted three years after its final appeal decision, Hartford's administrative review process would likely become indefinite. Review and appeal of claim determinations would become perpetual because, although Hartford may have acted within its discretion in denying a claim, Hartford would be without power to

---

[40] *Id.* at 320.
[41] *Id.* (emphasis added).
[42] *Id.* (emphasis added).
[43] *Id.*

close any given file. Instead, Hartford would be required to continue its consideration for as many years as Alexander or any other claimant decided to submit new records, thereby expanding the administrative record before filing suit.[44] In this Court's view, this is not the outcome intended by the Fifth Circuit in *Vega*. Accordingly, the Court finds Hartford did not abuse its discretion in refusing to consider the additional evidence submitted by Alexander.

   5. Conflict of interest

Alexander argues that this Court should view Hartford's decision to deny her claim in a less deferential light because Hartford is both the insurer and the administrator of her plan. The United States Supreme Court recently held that a conflict of interest does exist where, as here, the same entity both *evaluates* claims for benefits and *pays* the claims for benefits.[45] The Supreme Court declined to adopt a sliding scale approach, or any other "one-size-fits-all procedural system," to determine how to weigh the significance of this conflict. The Court held that a district court should consider the conflict as one factor in deciding whether a plan administrator abused its discretion, with the weight of the factor depending upon the circumstances of each case.[46] The Court said, "[t]he conflict of interest . . . should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that [the conflict] affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims."[47]

Alexander is correct in arguing that a conflict of interest exists in this case, since Hartford determines claims for benefits and administers those same benefits under Alexander's plan. The

---

[44] *See Provencio v. SBC Disability Income Plan*, No. SA-05-CA-0032-WWJ, 2006 WL 3927168, at *9 (W.D. Tex. Dec. 6, 2006) (explaining that if required to review additional documents after the final appeal, "a plan administrator would be forced to consider medical documentation of a claimant's purported disability *ad infinitum*, even after, and in spite of, the fact that the claimant's initial adverse benefits determination had been upheld on appeal").
[45] *Glenn*, 128 S. Ct. at 2347-49.
[46] *Id.* at 2346-51.
[47] *Id.* at 2351.

Court has considered this conflict as one factor in its analysis. However, there is no evidence to suggest that Hartford has a history of bias or bad faith in reviewing claims, nor that such bias or bad faith existed in this particular case. The Court, therefore, concludes that because substantial evidence supports Hartford's denial of benefits, no abuse of discretion occurred, despite any conflict of interest that exists.

The Court also finds without merit Alexander's argument that Hartford's reliance on the opinion of its hired medical consultant, Dr. Roaf, was somehow improper. While a conflict could arise where a medical consultant is hired and paid by the insurer to render a medical opinion relating to the alleged disability, in this case Dr. Roaf conducted an independent medical records review for the University Disability Consortium, which Hartford hired to obtain an unbiased evaluation of Alexander's claim. In light of the substantial evidence produced by Alexander's own treating physicians, Drs. Grant and Buley, the Court concludes that Hartford did not abuse its discretion in also relying on the medical opinion of an independent medical consultant, although she was retained through the Consortium by Hartford. For all of the reasons stated above, Alexander's Motion for Summary Judgment is **DENIED**.

**B.**     **Hartford's Motion for Summary Judgment**

Hartford moves for summary judgment on two grounds: 1) its determination that Alexander was no longer disabled was a factual determination within Hartford's discretion, supported by substantial evidence, which was not arbitrary and capricious and did not constitute an abuse of discretion; and 2) the additional evidence submitted nearly three years after its final decision to terminate benefits was finalized, and less than two weeks before Alexander filed suit, did not give Hartford a fair opportunity to consider the evidence as part of its appeal review, and therefore Hartford did not abuse its discretion in refusing to consider such evidence. Under Rule

56, to satisfy its burden the defendant must prove there is no genuine issue of material fact as to either ground. For the same reasons Alexander failed to prove an abuse of discretion, Hartford has indisputably demonstrated that substantial evidence supported its determination, and is therefore entitled to summary judgment.

This Court finds that the opinions of Drs. Grant, Buley and Roaf constitute substantial evidence upon which Hartford was entitled to rely, despite the existence of evidence to the contrary. This Court further finds that Hartford considered, and adequately addressed in its denial letter, all relevant claims made by Alexander for LTD. As a result, Hartford's decision to deny Alexander's claim was not arbitrary and capricious, nor an abuse of discretion.[48] Furthermore, Alexander's submission of additional evidence almost three years after the final appeal decision did not provide Hartford with a "fair opportunity" to consider the additional evidence. As a result, Hartford is entitled to summary judgment on both grounds, and Hartford's Motion for Summary Judgment is hereby **GRANTED**.

**SO ORDERED** this 31st day of December, 2008.

*[signature]*
**BARBARA M. G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**

---

[48] *See, e.g., Gothard*, 491 F.3d at 250 (holding substantial evidence supported administrator's decision when medical consultant's review found no objective evidence in support of plaintiff's claim despite the treating physician's opinion that the plaintiff was unable to work); *see also Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.* 168 F.3d 211, 215 (5th Cir. 1999) (holding no abuse of discretion occurred where a plan administrator's review was based on hospital records and the opinions of a number of qualified physicians).