IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| PAMELA ALEXANDER | § | |
| --- | --- | --- |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 3-07-CV-1486-M |
| | § | |
| HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY | § | |
| | § | |
| Defendant. | § | |

**FINDINGS AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

Plaintiff Pamela Alexander has filed two motions for prejudgment interest and two motions for attorney's fees and expenses as the prevailing party in this civil action brought under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*. For the reasons stated herein, plaintiff should be awarded $24,406.72 in prejudgment interest on benefits due under the "Your Occupation" provision of the disability policy, $20,114.36 in prejudgment interest on benefits due under the "Any Occupation" provision of the disability policy, and $80,936.45 in attorney's fees.

I.

In 2003, plaintiff, who was employed as the Bone Marrow Transplant Coordinator at Cook Children's Hospital, applied for long term disability ("LTD") benefits under a group insurance policy issued and administered by Defendant Hartford Life and Accident Insurance Company ("Hartford"). After initially approving her claim and paying disability benefits effective July 12, 2003, defendant reversed its decision and notified plaintiff that she would not receive any LTD payments after

October 20, 2003. That decision was affirmed in two subsequent administrative appeals. On August 30, 2007, plaintiff filed suit in federal district court alleging that defendant wrongfully denied her claim for LTD benefits under the "Your Occupation" and "Any Occupation" provisions of the policy.[1] The district court granted summary judgment for defendant. *See Alexander v. Hartford Life & Accident Ins. Co.*, No. 3-07-CV-1486-M (N.D. Tex. Dec. 31, 2008). On appeal, the Fifth Circuit held that defendant abused its discretion in denying plaintiff's claim because "there was not a rational connection between its conclusion that Alexander was not disabled and the information on which it relied to support that conclusion." *Alexander v. Hartford Life & Accident Ins. Co.*, 347 Fed. Appx. 123, 125, 2009 WL 3172195 at *2 (5th Cir. Oct. 5, 2009). The appeals court rendered judgment for plaintiff and remanded the case to the district court to calculate the amount of benefits owed, as well as to determine whether plaintiff should recover prejudgment interest, attorney's fees, and expenses. *Id.*, 2009 WL 3172195 at *3

On remand, the parties agreed that plaintiff was entitled to $72,464.60 in "Your Occupation" benefits through June 12, 2005. Defendant also determined on administrative review that plaintiff was entitled to $96,809.80 in "Any Occupation" benefits from June 13, 2005 through January 31, 2010. In separate motions, plaintiff now seeks $24,406.72 in prejudgment interest on "Your Occupation" benefits, $20,114.36 in prejudgment interest on "Any Occupation" benefits, $85,246.96 in attorney's fees, and $1,604.24 in expenses. These issues have been fully briefed by the parties, and the motions are ripe for determination.

---

[1] Under the Hartford policy, a person is "disabled" if he or she is "prevented . . . from performing one or more of the Essential Duties of Your Occupation." After 24 months, the definition of "disabled" changes so that the person must be "prevented from performing one or more of the Essential Duties of Any Occupation." *See Alexander v. Hartford Life & Accident Ins. Co.*, 347 Fed. Appx. 123, 125 & n.2, 2009 WL 3172195 at *2 & n.2 (5th Cir. Oct. 5, 2009).

II.

The court first considers whether plaintiff is entitled to recover prejudgment interest on past due benefits and, if so, how prejudgment interest should be calculated. Where, as here, a cause of action arises out of a federal statute, the determination of whether prejudgment interest should be awarded requires a two-step analysis. *Carpenters Dist. Council of New Orleans v. Dillard Dept. Stores, Inc.*, 15 F.3d 1275, 1288 (5th Cir. 1994), *cert. denied*, 115 S.Ct. 933 (1995). First, the court must determine whether the federal statute creating the cause of action precludes an award of prejudgment interest. *Id.* If not, the court must decide whether an award of prejudgment interest furthers the congressional policies of the federal act. *Id.* Only when these two conditions are satisfied does the court have discretion to award prejudgment interest. *Id.*; *see also Calderon v. Presidio Valley Farmers Ass'n*, 863 F.2d 384, 392 (5th Cir.), *cert. denied*, 110 S.Ct. 79 (1989). Nothing in the ERISA statute precludes an award of prejudgment interest. Moreover, the Fifth Circuit has recognized that "an award of prejudgment interest under ERISA furthers the purposes of that statute by encouraging plan providers to settle disputes quickly and fairly, thereby avoiding the expense and difficulty of federal litigation." *Hansen v. Continental Ins. Co.*, 940 F.2d 971, 984 n.11 (5th Cir. 1991). Thus, the court has discretion to award prejudgment interest in this case. *Id.*; *see also Roig v. Ltd. Long Term Disability Program*, 275 F.3d 45 (Table), 2001 WL 1267475 at \*5 (5th Cir. Oct. 9, 2001).

A.

The record shows that defendant terminated plaintiff's LTD benefits during the initial 24-month elimination period and failed to resume payments for more than six years. On appeal, the Fifth Circuit held that defendant abused its discretion in denying plaintiff's claim. *Alexander*, 2009

WL 3172195 at *2. "When benefits are paid only after the date on which the beneficiary was entitled to receive them under the terms of the plan, the beneficiary has not received the full value of what was promised and, to the same degree, the plan has realized an unjust enrichment [.] An award of interest in such circumstances serves as an equitable make-whole remedy." *Archer v. United Technologies Corp.*, No. 3-07-CV-1485-M, 2009 WL 2842773 at *1 (N.D. Tex. Sep. 1, 2009), *quoting Dunnigan v. Metro. Life Ins. Co.*, 277 F.3d 223, 229 (2d Cir. 2002).

Defendant counters with two arguments. First, defendant points out that this court determined on summary judgment that the denial of benefits was not an abuse of discretion. Although that decision was reversed on appeal, defendant argues that the initial ruling suggests that its actions were reasonable. (*See* Doc. #69 at 3). Second, defendant contends that plaintiff is not entitled to prejudgment interest on "Any Occupation" benefits in the absence of an enforceable judgment pertaining to such benefits. (*See* Doc. #77 at 2). With respect to the first argument, this court is bound by the appeals court decision. It may not revisit the issue of whether defendant abused its discretion in denying plaintiff's claim, even in the context of deciding whether to award prejudgment interest. Having determined that plaintiff was wrongfully denied $72,464.60 in "Your Occupation" benefits through June 12, 2005, and $96,809.80 in "Any Occupation" benefits from June 13, 2005 through January 31, 2010, denying prejudgment interest on those benefits would subvert the equitable principles such an award is meant to encourage. Nor is the court persuaded by defendant's argument that plaintiff is not entitled to prejudgment interest on "Any Occupation" benefits, which were established on administrative review rather than by an enforceable judgment. As the district court noted in *Archer*:

> It is immaterial that the Court did not order the payment of LTD benefits. The award of prejudgment interest is based on the equitable grounds that an injured party should be made whole. Defendant argues that it did not unlawfully withhold funds, and that it did not deny Archer's claim for LTD benefits once submitted. Under the terms of the plan, Defendant would not have addressed the LTD benefits claim until after there was a finding that Plaintiff was unable to perform all material duties of any occupation. That determination was delayed by [the plan administrator's] denial of Archer's claim for short-term benefits . . . . But for [the plan administrator's] abuse of discretion, Archer's STD benefits would have transitioned into LTD benefits several years earlier.

*Archer*, 2009 WL 2842773 at *2 (internal quotations and citations omitted). Like *Archer*, an award of prejudgment interest is appropriate in this case to make plaintiff "whole." It makes no difference that the amount of those benefits were quantified on administrative review rather than by court order.

B.

The parties also dispute the proper method for determining the amount of prejudgment interest. Plaintiff argues that prejudgment interest should be calculated "incrementally" by multiplying the amount of benefits due each month by the applicable interest rate under the Texas Finance Code during that period. (*See* Doc. #67 at 6-7 & Exh. H; Doc. #74 at 4-5 & Exh. P). Defendant proposes a flat rate of 5% per annum on all past due benefits. (*See* Doc. #69 at 2; Doc. #77 at 3).

Although federal law governs whether prejudgment interest should be awarded in ERISA actions, "it is appropriate for the district court to look to state law for guidance in determining the rate of interest." *Hansen*, 940 F.2d at 984. Section 304.003 of the Texas Finance Code establishes the rate of prejudgment interest at the postjudgment interest rate. *See Archer*, 2009 WL 2842773 at *2 n.13, *citing* TEX. FIN. CODE ANN. § 304.003(c) (Vernon 2006). During the relevant period, the

applicable interest rate was "the prime rate as published by the Board of Governors of the Federal Reserve System on the date of computation," *see* TEX. FIN. CODE ANN. § 304.003(c)(1), which fluctuated on a monthly basis from a high of 8.25% to a low of 5.00%. (*See* Doc. #67, Exh. F; Doc. #74, Exh. N). Using the "incremental" method suggested in her brief, plaintiff seeks to recover $24,406.72 in prejudgment interest on accrued "Your Occupation" benefits, (*see* Doc. #67, Exh. H), and $20,114.36 in prejudgment interest on accrued "Any Occupation" benefits. (*See* Doc. #74, Exh. P). Defendant does not dispute these mathematical computations. Instead, defendant argues that prejudgment interest on all past due benefits should be calculated at the 5% rate in effect in November 2009. (*See* Doc. #69 at 2; Doc. #77 at 3). In *Archer*, the court calculated prejudgment interest by "[m]ultiplying Archer's accrued monthly LTD benefits by the applicable monthly postjudgment interest rate under Texas Finance Code § 304.003(c)[.]" *Archer*, 2009 WL 2842773 at *2 n.17. The court elects to use the same "incremental" method of calculating prejudgment interest in this case.[2] Accordingly, plaintiff should recover $24,406.72 in prejudgment interest on "Your Occupation" benefits, and $20,114.36 in prejudgment interest on "Any Occupation" benefits, for a total of $44,521.08. No reduction is warranted because plaintiff waited until August 30, 2007 to file this lawsuit.

III.

The ERISA statute authorizes a court, in its discretion, to "allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). In exercising this discretion, the court determines "whether the party is entitled to an award of attorney's fees in light of the relevant factors,

---

[2] The court notes that the presiding district judge in this case is the same judge who decided *Archer*. It is less significant, but worthy of mention, that the plaintiffs in both cases were represented by the same attorney.

and, if it is, the court calculates the proper amount of the award." *Angel v. Boeing Co. Retiree Health and Welfare Benefit Plan*, No. 3-04-CV-1498-D, 2006 WL 1644335 at *1 (N.D. Tex. Jun. 8, 2006) (citing cases). The relevant factors are:

1. the degree of the opposing party's culpability or bad faith;

2. the ability of the opposing party to pay fees;

3. whether an award of attorney's fees would deter future conduct by other persons acting under similar circumstances;

4. whether the party seeking attorney's fees sought to benefit all ERISA participants or beneficiaries or to resolve a significant legal issue; and

5. the relative merits of the parties' positions.

*See Pitts v. American Security Life Insurance Co.*, 931 F.2d 351, 358 (5th Cir. 1991), *citing Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980). "No one of these factors is necessarily decisive, and some may not be apropos in a given case, but together they are the nuclei of concerns that a court should address in applying section [1132(g)]." *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 821 (5th Cir. 1997), *quoting Bowen*, 624 F.2d at 1266.

A.

The parties focus their arguments on the first of these factors -- whether defendant acted culpably or in bad faith. Plaintiff argues that culpability is shown by the Fifth Circuit's determination that defendant abused its discretion in denying plaintiff's claim for LTD benefits. (*See* Doc. #66 at 12-14). Defendant counters that this court's contrary ruling on summary judgment suggests that "reasonable minds could differ" on the decision to deny benefits, thereby negating any bad faith or other culpable conduct that would justify an award of attorney's fees. (*See* Doc. #68 at 5-6).

Egregious conduct, such as the pursuit of frivolous claims or a breach of fiduciary duty, may rise to the level of bad faith. *See UNUM Life Ins. Co. of America v. Brandon*, No. 3-98-CV-2835-D, 2000 WL 175363 at * 2 (N.D. Tex. Feb. 14, 2000), *citing Freedman v. Texaco Marine Services, Inc.*, 882 F.Supp. 580, 584-85 (E.D. Tex. 1995). However, culpable conduct that does not amount to bad faith may also weigh in favor of awarding fees. *See, e.g. Wegner*, 129 F.3d at 821 (frivolous justification offered by insurer for denying disability claim justified an award of attorney's fees, even if such conduct did not rise to the level of bad faith); *Brandon*, 2000 WL 175363 at *3 (baseless defenses asserted by beneficiary in action to recover overpayments supported an award of attorney's fees, even though defenses were not frivolous or advanced in bad faith). Here, defendant grossly mischaracterized the medical evidence in support of its decision to deny plaintiff's claim for LTD benefits. As the Fifth Circuit explained:

> Hartford's final letter denying Alexander's administrative appeal, dated September 1, 2004, relied significantly on the report of Dr. Elizabeth Roaf, who had been hired by Hartford to independently review Alexander's records (and had not personally examined Alexander). The final denial letter stated that Dr. Roaf "noted the results of your June 3, 2003 Functional Capacity Evaluation, which indicated that you could function in a light duty capacity." This statement in the letter was factually incorrect, both about Dr. Roaf's report and about the FCE's results. Dr. Roaf's report did not mention the results of the FCE. And the FCE stated that Alexander's lifting ability was less than what Hartford's occupational analysis said that a "light" job, like Alexander's, required. Hartford's final denial letter did nothing to rebut the FCE; all it did was misstate its results. There was no rational connection between the known information and the conclusion on this important issue.
>
> The denial letter, quoting Dr. Roaf's report, stated that Alexander was limited to 15 pounds of pushing and pulling. This limit is lower than what Hartford's own "Occupational Requirements" form stated was

> required for Alexander's job: "Lifting, Carrying, Pushing, Pulling 20
> lbs. occasionally." Although the denial letter treated this information
> as if it supported Hartford's conclusion that Alexander was not
> disabled, it plainly supported the opposite conclusion. Thus, there
> was no rational connection between the information Hartford relied
> on and the conclusion it reached.

*Alexander*, 2009 WL 3172195 at *2. Whether defendant's conduct was deliberate or merely negligent, its lax treatment of such important information weighs in favor of awarding attorney's fees to plaintiff. *See Schully v. Continental Casualty Co.*, No. 09-30668, 2010 WL 2332080 at *2 (5th Cir. Jun. 7, 2010) (affirming award of attorney's fees where ERISA plan administrator "deliberately ignored" medical evidence in order to support its "preferential and predetermined conclusions").

Most of the other factors also weigh in favor of awarding attorney's fees. Defendant does not contest its ability to pay fees and costs. Because defendant acted culpably in mischaracterizing the record in order to support its disability decision, requiring defendant to pay attorney's fees would deter similar conduct in the future. *See Delgado v. Plans Admin. Com'n of Citigroup, Inc.*, No. V-06-39, 2010 WL 786572 at *5 (S.D. Tex. Mar. 4, 2010). The Fifth Circuit's holding that "Hartford abused its discretion because there was not a rational connection between its conclusion that Alexander was not disabled and the information on which it relied to support that conclusion," *see Alexander*, 2009 WL 3172195 at *2, suggests that there is no equivalence of merit in the parties' positions. Only one factor weighs against an award of attorney's fees -- this case did not resolve any significant legal question under ERISA or benefit a number of plan participants. Nevertheless, the court concludes that, on balance, the relevant factors weigh in favor of awarding fees under section 1132(g)(1).

B.

A prevailing party may recover only those fees that are reasonably expended on the litigation. *See Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983); *Watkins v. Fordice*, 7 F.3d 453, 458 (5th Cir. 1993). In assessing the reasonableness of attorney's fees, the court must first determine the "lodestar fee" by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly billing rate for each participating attorney. *See Hensley*, 103 S.Ct. at 1939; *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir.), *cert. denied*, 116 S.Ct. 173 (1995). Once the lodestar fee is determined, it may be adjusted upward or downward depending on the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).[3] *See Shipes v. Trinity Industries*, 987 F.2d 311, 319-20 (5th Cir.), *cert. denied*, 114 S.Ct. 548 (1993). Here, plaintiff seeks $79,535.00 in attorney's fees for 228.5 hours of work performed by her attorney at rates ranging from $300.00 per hour to $350.00. In addition, plaintiff seeks $1,401.45 in Westlaw charges,[4] and a 6% enhancement of attorney's fees to compensate for the delay in payment. Defendant does not challenge the time expended by counsel, his hourly billing rate, or the Westlaw charges, but objects to any enhancement of the lodestar fee.

---

[3] The *Johnson* factors are: (1) the time and labor required for the case; (2) the novelty and difficulty of the issues involved; (3) the skill required to litigate the case; (4) the ability of the attorney to accept other work; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances of the case; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the attorney-client relationship; and (12) awards in similar cases. *See Cobb v. Miller*, 818 F.2d 1227, 1231 n.5 (5th Cir. 1987), *citing Johnson*, 488 F.2d at 717-19.

[4] Although the Fifth Circuit has not yet addressed this issue, a number of district courts in the circuit have determined that the cost of reasonable computerized legal research is recoverable as attorney's fees. *See, e.g. HCC Aviation Ins. Group, Inc. v. Employers Reinsurance Corp.*, No. 3-05-CV-0744-M, 2008 WL 850419 at *11 & n.8 (N.D. Tex. Mar. 21, 2008); *Javelin Investments, LLC v. McGinnis*, No. H-05-3379, 2007 WL 1003856 at *4 (S.D. Tex. Mar. 30, 2007); *Camargo v. Trammell Crow Interest Co.*, 318 F.Supp.2d 448, 451 (E.D. Tex. 2004).

Enhancements to the lodestar amount are appropriate only in exceptional cases where the prevailing party demonstrates that the enhancement is necessary to make the lodestar reasonable. *See Cooper v. Pentecost*, 77 F.3d 829, 833 (5th Cir. 1996). For all but 8.8 hours billed in this case, the lodestar compensates counsel at his current billing rate of $350.00 per hour. That billing rate is well within the range of reasonable hourly rates for attorneys with comparable experience. (*See* Doc. #66, Exh. A at 3-4, ¶¶ 6-8). "In compensating for a delay, the district court may either grant an unenhanced lodestar based on current rates . . ., or calculate the lodestar using the rates applicable when the work was done and grant a delay enhancement[.] It may not do both." *Walker v. U.S. Dept. of Housing and Urban Dev.*, 99 F.3d 761, 773 (5th Cir. 1996) (internal citations omitted). Thus, to award an enhancement above the lodestar in this case would result in a windfall to plaintiff's counsel. Moreover, counsel represented plaintiff on a contingent basis, agreeing he would be compensated only if and when plaintiff was successful on the merits. (*See* Doc. #66, Exh. A at 3-4, ¶¶ 6). The Supreme Court has held that enhancement of the lodestar based on the contingent nature of a fee is not permitted when fees are awarded to counsel under fee-shifting statutes. *City of Burlington v. Dague*, 505 U.S. 557, 567, 112 S.Ct. 2638, 2643-44, 120 L.Ed.2d 449 (1992); *see also Humphrey v. United Way of Texas Gulf Coast*, No. H-05-758, 2008 WL 5070057 at *6 n.8 (S.D. Tex. Nov. 20, 2008) (noting that contingent nature of representation would not be an appropriate basis for enhancement of lodestar). The court therefore declines to enhance the lodestar fee.

C.

Finally, plaintiff seeks reimbursement of $339.70 in expenses incurred by counsel in traveling to New Orleans for oral argument, $74.75 in FedEx delivery charges, and $675.00 in mediation fees. (*See* Doc. #66, Exh. A at 4-5, ¶¶ 10-13). Although defendant has not objected to

any of these expenses, the court has independently reviewed the expense items and determines that none are recoverable.

The ERISA fee-shifting statute allows a party to recover "costs of action." 29 U.S.C. § 1132(g)(1). Such "costs" are limited to those enumerated in 28 U.S.C. §§ 1920 and 1821. *See Collinsworth v. AIG Life Ins. Co.*, No. 3-04-CV-1397-M, 2007 WL 4965041 at *4 (N.D. Tex. Feb. 27, 2007), *aff'd*, 267 Fed.Appx. 346, 2008 WL 510027 (5th Cir. Feb. 26, 2008) (citing cases) ("[T]he general allowance of costs in § 1132(g)(1) does not authorize an award of costs outside of §§ 1920 and 1821."). Costs for mediation, delivery, and postage are not allowed under sections 1920 or 1821. *See Cook Children's Medical Center v. New England PPO Plan of Gen. Consol. Mgmt., Inc.*, 491 F.3d 266, 275-76 (5th Cir. 2007), *cert. denied*, 128 S.Ct. 1223 (2008); *Collingsworth*, 2007 WL 4965041 at *4. Neither are travel expenses. *See Nicolas v. MCI Health and Welfare Plan No. 501*, No. 2-05-CV-00442-TJW, 2009 WL 430397 at *2 (E.D. Tex. Feb. 18, 2009). These costs should be disallowed.

## RECOMMENDATION

Plaintiff's motions for prejudgment interest [Docs. #67 & 74] should be granted. Plaintiff should be awarded $24,406.72 in prejudgment interest on "Your Occupation" benefits, and $20,114.36 in prejudgment interest on "Any Occupation" benefits, for a total of $44,521.08. Plaintiff's motion [Doc. #66] and supplemental motion [Doc. #73] for attorney's fees and expenses should be granted as modified. Plaintiff should be awarded $80,936.45 in attorney's fees pursuant to 29 U.S.C. § 1132(g)(1).

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file

specific written objections within 14 days after being served with a copy. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. See Douglass v. United Services Automobile Ass'n, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: August 30, 2010.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE